**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff–Appellee,**

v.

**WILSON METAL CASKET COMPANY,**
**Defendant–Appellant.**

No. 92–6643.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1994.

Decided May 23, 1994.

**838**

George C. Bradley, Yollander Hardaway, E.E.O.C., Memphis, TN, Susan L. Starr, E.E.O.C., Office of Gen. Counsel, Washington, DC (argued and briefed), for plaintiff-appellee.

Wade Bonham Cowan, Nashville, TN (argued and briefed), for defendant-appellant.

Before: KEITH and RYAN, Circuit Judges; and JOHNSTONE, Senior District Judge.*

KEITH, Circuit Judge, delivered the opinion of the court, in which JOHNSTONE, Senior District Judge, joined. RYAN, Circuit Judge (pp. 843–45), delivered a separate opinion concurring in part and dissenting in part.

DAMON J. KEITH, Circuit Judge.

Defendant–Appellant, Wilson Metal Casket Co. ("Wilson Metal"), appeals the district court's judgment for Plaintiff–Appellee, the Equal Employment Opportunity Commission ("EEOC"), in an employment action for sexual harassment, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. For the reasons stated below, we **AFFIRM** the district court's (1) grant of relief to Dawn McMullan; (2) award of medical expenses to Ellis as a part of her back pay award; and (3) its grant of injunctive relief. We **REVERSE** the award of the full amount of accrued prejudgment interest and award ½ of the accrued prejudgment interest.

## I.

Wilson Metal, a Tennessee corporation owned and operated by Elmer Wilson ("Wilson"), hired William Ellis on January 11, 1974 and Barbara Ellis on August 6, 1979. William and Barbara are married. Wilson Metal employed Dawn Bryan McMullan ("McMullan") on April 20, 1987.

In 1982, while Barbara Ellis' husband was on temporary medical leave, Wilson relocated Barbara's work station to a building separate from the main plant. Wilson repeatedly followed Barbara Ellis as she walked through the building and whenever she reached an isolated spot he grabbed her, held her, kissed her, and fondled her, touching her breasts and buttocks. He also made sexual comments, requested she meet him after working

---

* The Honorable Edward H. Johnstone, Senior United States District Judge for the Western District of Kentucky, sitting by designation.

hours, and forced her to accompany him to isolated areas of the plant and to perform oral sex on him. When William Ellis returned to work, Wilson moved Barbara Ellis' work station back to the main plant and stopped demanding oral sex. The sexual harassment, however, continued.

On September 18, 1984, William Ellis phoned Wilson at home and said he knew Wilson was having an affair with his wife and demanded that it stop. Wilson's wife overheard her husband's side of the conversation and became upset. Wilson announced the incident at a meeting of his employees, including the Ellises. The Ellises denied any allegations of a sexual relationship between Wilson and Barbara Ellis. Wilson, however, fired the Ellises and gave them separation slips which stated they were terminated because of the telephone call and its effect upon Mrs. Wilson.

In 1987, Dawn McMullan worked for Wilson Metal for approximately three months. During McMullan's employment, anytime she was in isolated parts of the plant, Wilson fondled her breasts and buttocks, and sexually propositioned her. In July 1987, McMullan telephoned Wilson and told him she was not coming to work that day because of his continued sexual advances. Wilson told her she was terminated.

On October 31, 1984, William and Barbara Ellis filed separate charges with the EEOC alleging Wilson Metal discriminated against them and other female employees by either subjecting them to sexual harassment or retaliating against their protests of sexual harassment in violation of Title VII. After an investigation, the EEOC found reason to believe: (1) Wilson Metal had sexually harassed Barbara Ellis; (2) Wilson Metal discharged William and Barbara Ellis because they objected to Wilson's sexual harassment; (3) Wilson engaged in a common practice of making sexual advances toward female employees; and (4) at least two other female employees were forced to quit because of Wilson's advances. Attempts to conciliate the charges failed in June 1988, and September 1988, the EEOC filed suit in federal district court.

A magistrate judge conducted a trial and submitted a report and recommendation to the district court finding: (1) the EEOC proved a hostile working environment existed at Wilson Metal; (2) Wilson Metal discharged William and Barbara Ellis in retaliation for their objections to sexual harassment of female employees; and (3) Dawn McMullan was constructively discharged. The district court adopted the findings regarding liability but found that the magistrate clearly erred by denying Barbara Ellis medical expenses as part of her back pay award, and by denying prejudgment interest on all back pay awards. This timely appeal followed.

## II.

On appeal, Wilson Metal argues the district court erred by: (1) including McMullan's claim in this action because she failed to file a complaint with the EEOC; (2) rejecting the magistrate's recommendation to deny an award for medical expenses; (3) awarding prejudgment interest; and (4) imposing an overly broad injunction that was not narrowly tailored to the unlawful conduct. We will discuss each allegation of error below.

### A.

Wilson Metal argues the district court erred by granting relief to McMullan because (1) she failed to file a charge with the EEOC as required by statute; and (2) her claim did not arise during the same time frame as Ellis' claim. The district court granted McMullan's request for relief stating McMullan's claim fell within an exception to the filing requirement known as the "single filing rule." We agree.

■ Timely filing of an EEOC complaint is a prerequisite to a Title VII suit. 42 U.S.C. § 2000e–5(e); *Allen v. United States Steel Corp.*, 665 F.2d 689, 695 (5th Cir.1982). The purpose of the Title VII filing requirement is to give notice of potential Title VII liability to an alleged wrongdoer and to allow the EEOC to attempt to conciliate with the wrongdoer rather than go to court. *Foster v. Gueory*, 655 F.2d 1319, 1323 (D.C.Cir.1981). Many courts, however, have recognized an exception to the EEOC filing requirement

known as the "single filing rule."[1] For example, the Eleventh Circuit adopted the "single filing rule" stating that "[i]n a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." *Ezell v. Mobile Housing Board,* 709 F.2d 1376, 1381 (11th Cir.1983).

■ The rationale behind the "single filing rule" is the belief that it would be wasteful for numerous employees with the same grievances to file identical complaints with the EEOC. *See Wheeler v. American Home Products Co.,* 582 F.2d 891, 897 (5th Cir. 1977). Consequently, we join the above circuits and hold where a substantially related non-filed claim[2] arises out of the same time frame as a timely filed claim, the complainant need not satisfy Title VII's filing requirement to recover. *See Ezell,* 709 F.2d at 1381.

■ Here, the claims of sexual discrimination are virtually identical. Wilson sexually propositioned and harassed both Ellis and McMullan at work. Clearly, Wilson engaged in a common practice of sexual harassment of female employees. Because the practice of sexual harassment in this case continued over a three year period, the claims arose during the same time period. Additionally, the EEOC's letter of determination gave Wilson Metal notice of charges related to Ellis' allegations and an opportunity to conciliate the charges. McMullan's claim falls within the purview of the "single filing rule."[3] The district court properly granted McMullan relief.

## B.

Next, Wilson Metal argues the district court clearly erred by rejecting the magistrate's recommendation to deny an award of medical expenses to Barbara Ellis. The district court concluded the magistrate clearly erred by stating "no proof was introduced at trial showing that the Wilson medical plan would have covered Barbara Ellis' expenses had she remained a Wilson employee" and awarded medical expenses to Barbara Ellis. We agree.

■ This court may only overturn a grant or denial of back pay upon a showing that the district court abused its discretion in fulfilling the purposes of Title VII. *Albemarle v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975). The remedial section of Title VII authorizes back pay and other compensation for economic losses sustained. 42 U.S.C. § 2000e–5(g)(1). "Victorious Title VII plaintiffs are presumptively entitled to back pay until the date judgment has been entered in the case." *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985); *accord Rasimas v. Michigan*

---

1. *See Snell v. Suffolk County,* 782 F.2d 1094, 1100 (2d Cir.1986); *Ezell v. Mobile Housing Brd.,* 709 F.2d 1376, 1381 (11th Cir.1983); *Foster v. Gueory,* 655 F.2d 1319, 1322 (D.C.Cir.1981); *Wheeler v. American Home Products Corp.,* 582 F.2d 891, 897 (5th Cir.1977); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 883 (8th Cir.1977).

2. Other courts have defined the scope of "individual claims arising out of similar discriminatory treatment" on a case by case basis by examining the similarity of the claims. *See Snell v. Suffolk Co.,* 782 F.2d 1094, 1101 (2d Cir.1986) ("All these incidents were of a similar nature and occurred at the Suffolk County Correction Facility within a three-year period."); *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1058 (2d Cir.1990) ("Where the grievances arise in a work unit of modest size, ... mere similarity of the grievances within the same general time frame suffices to permit the 'single filing rule.' "); *Ezell v. Mobile Housing Brd.,* 709 F.2d 1376, 1381 (11th Cir.

1983) ("The question presented is ... whether Evans' claim of discrimination was similar enough to either Ezell's claim or Smith's claim for the district court to invoke the single filing rule.").

3. As the dissent aptly notes, our court has previously adopted the "reasonable investigation rule." *EEOC v. Bailey Co., Inc.,* 563 F.2d 439 (6th Cir.1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978). In *Bailey,* this court held the scope of the EEOC's complaint is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Bailey,* 563 F.2d at 447; *see also EEOC v. Keco Indus., Inc.,* 748 F.2d 1097 (6th Cir.1984). While the "reasonable investigation rule" may also encompass McMullan's claim, we believe the "single filing rule" directly addresses the issue of whether Title VII's filing requirement precludes McMullan's recovery.

*Dep't. of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983) ("in absence of exceptional circumstances, back pay should always be awarded when a Title VII violation is found"). Although back pay awards consist primarily of wages, such awards may also include fringe benefits such as compensation for medical expenses incurred. *Rasimas*, 714 F.2d at 626; L. Larson, *Employment Discrimination*, Vol. 3, § 55.37(b).

■■■ The victim of discrimination must prove entitlement to back pay by providing information from which her damages can be determined. *Wooldridge v. Marlene Industries Corp.*, 875 F.2d 540, 547 (6th Cir.1989) Once the victim has proven the amount of damages, "she is presumed to be entitled to the amount claimed unless the defendant can prove" otherwise. *Id.* On appeal, Wilson Metal must demonstrate that it proved by a preponderance of the evidence that Barbara Ellis was not entitled to medical benefits. *Id.*

Wilson Metal argues the magistrate correctly held there was no evidence that its medical plan would have covered Barbara Ellis' medical expenses had she remained in Wilson Metal's employment. Barbara Ellis, however, testified Wilson Metal's medical plan provided 100% coverage for "medical expenses, hospitalization and doctor bills" with a $200 deductible, and that the plan would have covered her medical expenses. Ellis also stated that while an employee at Wilson Metal, she underwent a surgical procedure. According to Ellis, all her doctor bills and medications were completely covered by Wilson Metal's medical plan less the deductible. Additionally, the EEOC presented testimonial and circumstantial evidence substantiating Ellis' claims for medical expenses. Because Barbara Ellis proved her amount of damages, she was presumed to be entitled to that amount. Wilson Metal did not present any evidence to contradict this testimony, and therefore, failed to prove by a preponderance of evidence that Barbara Ellis was not entitled to an award covering her medical expenses.

■■■ Wilson Metal also contends that Ellis' right to back pay was tolled during the time period when the medical expenses were in-

curred because she voluntarily withdrew from the workforce. Thus, according to Wilson Metal, her right to medical expenses was also tolled. In support of this proposition, Wilson Metal cites *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985) and *NLRB v. Miami Coca–Cola Bottling Co.*, 360 F.2d 569 (5th Cir.1966). The instant case, however, is easily distinguished from the cited authority. In *Brady* and *Miami Coca–Cola*, the claimants either failed to seek employment or quit jobs for no apparent reason, and as a result, their right to back pay was tolled. Here, Barbara Ellis entered a hospital for medical care. There was no evidence that she entered the hospital for any other reason. Additionally, Barbara Ellis' uncontradicted testimony stated the medical costs would have been covered had she been employed at Wilson Metal during that time even though she would not have been entitled to her wages. Although medical expenses are an element of a back pay award, in the instant case an award of medical expenses while back pay was tolled is consistent with the goals and purposes of Title VII to make victims of discrimination whole. *Albemarle*, 422 U.S. at 424, 95 S.Ct. at 2374–75. Barbara Ellis would not have incurred medical costs but for her unlawful termination. Thus, the district court did not abuse its discretion by awarding Barbara Ellis medical expenses as a part of her back pay award.

### C.

Wilson Metal next argues the district erred by rejecting the magistrate's recommendation to deny prejudgment interest. The district court awarded prejudgment interest concluding the court found "no reason not to make complainants whole." Although we agree in sentiment, we disagree in degree as discussed below.

■■■ A district court's award of prejudgment interest is reviewed for an abuse of discretion. *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185, 65 S.Ct. 254, 260, 89 L.Ed. 160 (1944). An award of "prejudgment interest ... is an element of complete compensation" in a Title VII back

pay award. *Loeffler v. Frank*, 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988) (citations omitted). Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred. *West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987). This court commonly awards prejudgment interest on back pay awards. *See EEOC v. Wooster Brush Co.*, 727 F.2d 566, 578 (6th Cir.1984) (prejudgment interest added to "back pay awards [has] become reasonably common").

 Here, charges were filed with the EEOC in October 1984. In May 1988, after approximately four years of investigation, the EEOC filed a complaint in the district court. In August 1992, the district court entered judgment. Although we agree an employer who violated Title VII is not entitled to an interest free loan as to relief awarded, because processing this action took an inordinate amount of time, we find the district court abused its discretion in awarding the full amount of prejudgment interest.

We do, however, recognize that victims of discrimination should not be penalized for putative delays in the administrative or judicial process. *See Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1297 (7th Cir.1987). We, therefore, reverse the award of $29,980.12 in prejudgment interest and award ½ of the accrued prejudgment interest, $14,990.06.

**D.**

Finally, Wilson Metal argues the injunction in the instant case is overly broad and enjoins lawful conduct. Specifically, the injunction enjoins Wilson from "asking any female employee to accompany him off the premises of the Company unless accompanied by at least one other employee, and kissing or placing his hands on any female employee in the work place." None of this conduct, according to Appellant is, in and of itself, unlawful.

 A district court has broad discretionary powers to craft an injunction to the specific violations found to ensure that the employer complies with the law. *Lemon v. Kurtzman*, 411 U.S. 192, 201, 93 S.Ct. 1463 1469–70, 36 L.Ed.2d 151 (1973) (per Burger, C.J.) ("In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests."); *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944) ("the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case"). The proper scope of an injunction is to enjoin conduct which has been found to have been pursued or is related to the proven unlawful conduct. *Nelson v. International Bhd. of Elec. Workers, Local No. 46*, 899 F.2d 1557, 1564–65 (9th Cir.1990). "In fashioning relief against a party who has transgressed the governing legal standard, a court of equity is free to proscribe activities that, standing alone, would have been unassailable." *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., et al.*, 549 F.2d 368, 390 (5th Cir.1977).

 In the instant case, a distinct pattern of sexual harassment emerged. Wilson either waited until female employees were alone with him in isolated portions of the facilities or transferred them to isolated areas. Once they were isolated, he grabbed them and fondled their breasts and buttocks. With Barbara Ellis, in addition to unwanted fondling, Wilson forced her to engage in oral sex and sexual intercourse. Wilson also sexually propositioned female employees and asked them to accompany him off the company's premises. Based on this pattern of behavior, the injunction appropriately enjoins conduct which allowed sexual harassment to occur. Thus, the district court did not abuse its discretion.

**III.**

For the reasons stated above, we **AFFIRM** the district court's (1) grant of relief to Dawn McMullan; (2) award of medical expenses to Ellis as a part of her back pay award; and (3) its grant of injunctive relief. We **REVERSE** the award of the full amount

of accrued prejudgment interest and award ½ of the accrued prejudgment interest.

RYAN, Circuit Judge, concurring in part and dissenting in part.

I concur in sections IIC and IID of the majority opinion, regarding prejudgment interest and the scope of the district court's injunction. In addition, I concur in section IIA's affirmance of the award to Dawn McMullan. I do not, however, concur in reasoning used to reach that affirmance. Finally, I dissent from the decision to uphold the award of medical expenses to Barbara Ellis, as discussed in section IIB of the majority opinion.

## I.

### McMullan's Award

In section IIA of its opinion, the majority relies on the "single filing rule" to support its affirmance of the award to Dawn McMullan. As the majority opinion recognizes, this circuit has never previously discussed or applied the "single filing rule." The opinion does not recognize, however, that this circuit has adopted the "reasonable investigation rule," which will also support an affirmance of the district court's decision regarding McMullan.[1] I see no need to adopt a new legal standard when an existing one reaches the same result.

According to the "reasonable investigation rule," a complaint filed by the EEOC may include all claims discovered in an investigation which is reasonably expected to grow out of the initial charge of discrimination. *EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978); *see also EEOC v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984). The initial charges filed by Barbara and William Ellis relate to sexual harassment. Those charges were filed in 1984, and the EEOC investigation lasted until 1988. Elmer Wilson sexually harassed McMullan in 1987. Thus, the EEOC could reasonably be expected to have learned about McMullan during the course of its investigation.

This requirement, however, is not the sole requirement the EEOC must meet prior to bringing suit on behalf of McMullan. The EEOC also must have given Wilson Metal Casket Company both notice of the fact that it was investigating more than the Ellises' claims and an opportunity to conciliate the claims. *Keco Indus.*, 748 F.2d at 1101. A district court may not inquire into the sufficiency of any conciliation attempts; the court is limited to determining whether any such attempts were made. *Id.* at 1100.

The determination letter issued by the EEOC did not specifically name McMullan. This court, however, has explicitly declared that "the recitation of each claim of discrimination in the EEOC's letter of determination is [not] a rigid prerequisite to the assertion of those claims by the EEOC at trial." *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1236 (6th Cir.1980). It is sufficient that the letter informed Wilson Metal that the EEOC had determined that reasonable cause existed to believe that Elmer Wilson "had a common practice of making sexual advances to female employees and that ... at least two other females were forced to quit because of the sexual advances of ... Wilson."

The magistrate judge found that the EEOC's letter of determination gave sufficient notice to Wilson Metal of McMullan's claim and that the EEOC provided Wilson Metal the opportunity to conciliate McMullan's claim. These findings must stand unless clearly erroneous, and Wilson Metal has not pointed to any evidence that would indicate that the findings were clearly erroneous. Defendant's primary argument is that McMullan did not formally indicate until 1989 that she wished to pursue a claim against Wilson Metal. This does not, however, mean that the EEOC was not aware of the facts underlying the claim. Because the EEOC notified Wilson Metal that it found a possible pattern and practice of sexual harassment, it is reasonable to assume that conciliation proceeded on those grounds. Wilson Metal has not provided any evidence that would dispute this characterization of the scope of concilia-

---

1. Indeed, the EEOC itself opines that the "single filing rule" does not apply to this case and that the "reasonable investigation rule" is the more correct standard to apply.

tion. Accordingly, McMullan's claim satisfies the three elements of the "reasonable investigation rule," and she is entitled to recover her damages.

Since the stated law in this circuit supports the district court's decision, there is no need to forge new law in this case. Accordingly, I concur in the result of section IIA, but not for the reasons stated therein.

## II.

### Medical Expenses

The majority opinion upholds the district court's award of medical expenses to Barbara Ellis. I cannot agree, and I would reverse the judgment of the district court on this issue.

My disagreement with the majority opinion is not with legal standards it employs in determining Ellis's entitlement to medical expenses, but with its application of these standards.

This circuit has not defined the evidentiary burden imposed upon a claimant who seeks reimbursement for medical expenses in a case of this nature, particularly in the context of medical insurance. The Fourth and Fifth Circuits have, and what they have said is instructive.

The Fourth Circuit ordinarily does not allow a claimant to recover the proceeds of any insurance coverage, but rather limits recovery to the amount of the premiums the employer would have paid. *Fariss v. Lynchburg Foundry,* 769 F.2d 958 (4th Cir.1985). The Fourth Circuit has made an exception to this rule when the claimant shows that she made a "serious effort to obtain other insurance" and that she incurred medical bills that she had to pay out-of-pocket due to the loss of insurance. *EEOC v. Service News Co.,* 898 F.2d 958, 964 (4th Cir.1990).

Barbara Ellis presented no evidence whatever, that Wilson Metals provided medical insurance for its employees during 1987 and 1988, when her medical expenses were incurred. Indeed, she did not introduce any documentary evidence, such as a copy of the insurance policy, to prove the existence of medical insurance coverage at the time of her discharge in 1984. She chose instead to rely solely on her own testimony, but even then, offered no testimony that the company's earlier policy would have covered the expenses she incurred. She testified that, during the time she worked for Wilson Metal, she was covered by hospitalization insurance that provided for "major medical benefits." Ellis later clarified that the policy paid for 100% of "medical expenses, hospitalization and doctor bills" after the employee paid a $200 deductible. Ellis illustrated this coverage by testifying that she had GI tract surgery during the time she worked for Wilson Metal and that she was only required to pay the $200 deductible; everything else was covered. She then introduced various bills and receipts to document the amount of her out-of-pocket medical expenses. All the expenses were incurred in 1987 and 1988, and most of them related to Ellis's hospitalization for alcoholism treatment and rehabilitation.

The district court awarded Ellis the full amount of her out-of-pocket losses. If this court were to apply the Fourth Circuit's test, it must reverse this award. Ellis presented no evidence at trial to show she made a "serious effort" to obtain coverage after she was discharged from Wilson Metal. Thus, under the Fourth Circuit's rule, Ellis would be entitled to the amount of the premiums that Wilson Metal would have paid toward her health insurance, and no more. I believe, however, that this test is too stringent because, as I will explain later, it places a greater burden on Ellis than our past decisions would support.

The Fifth Circuit's rules are a little more vague concerning what the claimant must show. In *Purcell v. Seguin State Bank & Trust Co.,* that court stated:

In [a prior opinion], we considered whether a successful ADEA claimant could recoup automatically the value of a health insurance fringe benefit. We held that the ADEA claimant was limited to recovery of actual expenses incurred either to purchase replacement health insurance or to pay for actual medical expenses. And the record shows that [the plaintiff] presented no evidence that he either purchased sub-

stitute insurance or paid for medical treatment that insurance would have covered. 999 F.2d 950, 960 (5th Cir.1993). Ellis did show that she had to pay for medical treatment after her unlawful discharge. The question, then, is whether Ellis sufficiently showed that this was treatment "that insurance would have covered."

Even if we indulge the presumption that the medical insurance benefits Ellis claimed existed in 1984 were still in place in 1987 and 1988, Ellis offered no proof that the medical expenses she incurred would be covered. She made no effort to show that the expenses for her treatment and rehabilitation for alcoholism would have been covered under Wilson Metal's health insurance program, either before or after her discharge. Drug and alcohol rehabilitation are special kinds of medical expenses; they are not the same as GI tract surgery. Simply because the policy covered the latter expense does not mean that it covered the former. Because Ellis failed to show that her medical expenses were compensable losses covered by Wilson Metal's health insurance policy, she was not entitled to an award for those expenses.

Although this circuit has not decided how the proof burdens should be allocated for medical expense claims, we have done so with regard to back pay claims:

> Once a claimant establishes a prima facie case and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant.

*Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). To establish a *prima facie* back pay case, a claimant must present evidence from which the district court can determine her salary, as well as any raises to which the claimant would have been entitled but for the discrimination. According to *Rasimas*, the defendant can then seek to reduce this award by showing that the claimant either partially mitigated her damages by accepting other employment or failed to mitigate damages by not making diligent efforts to seek other employment.

Applying this logic to the present case and to medical benefits, Ellis was required to prove both the amount of her damages and that these damages would have been covered under her health insurance at Wilson Metal. Ellis did not show that any policy provided by Wilson Metal, either before or after she was discharged, would have covered these expenses. Because Ellis did not present a *prima facie* case, the burden of rebuttal never shifted to Wilson Metal. Accordingly, the magistrate judge was correct to recommend that medical expenses not be awarded, and the district court erred in awarding such damages.